Good morning your honor, stand open at your next hearing for the appellant Nelson Carballo. First, I'd like to say that the Fair Employment and Health Act, with disability discrimination, the purpose is really to allow employees to work in non-singles, leaves are granted, but usually on a temporary basis. Comcast claims that there was enough discriminatory reason for Mr. Carballo's termination, and that was that he chose to ignore safety regulations of OSHA, and were despised for allegedly being told to go home. This is based both on procedure violations because the summary judgment standards were not followed by the district court. Two examples. First, Carballo told his supervisors that if he had bought that beneath him in a gas, they had excominated him by letting him work underground. He was told that there were a lot of outages that day, and to do the best you can. If you look at the excerpt of record, at page 200, you have Comcast's attorney asking Carballo, okay, your question, did Will Chandler say anything else other than there's a lot of outages, we need you here, go and do the best you can. Other than that, did he say anything else? The answer is no. Yet the court ruled that Mr. Carballo had been told that he could go home. That's not in the record. That's on something else. Let's just clarify this. I want to find out, I mean, he was told that he could have to leave, is that right? He was told that it was an accommodation when his gout flared up or was causing him pain or the inability to work. Is that correct? Yes. But that was basically to deal with acute attendance of gout. And as the record shows, the medical evidence sometimes calculates two weeks. His problem was catch-22. He had previously been disciplined for attendance-related gout. He took more than three, four days, and then later was moved to five days. He could be disciplined for attendance. Well, this is the beginning of the month, so he could have taken it, right? Right. But my point is you have a situation where the court in Comcast replied- Can I just ask you a question? Because this is, for me, the main point. It's clear that he had a disability regarding the gout. He admits, I believe, your client that the leave was a reasonable accommodation. Well, that was done by a Kaiser doctor, for example, who was not an occupational doctor. He didn't even know what Mr. Carballo did. He had never seen any job description or anything. And he was granted leave for the acute attacks of gout. Did Mr. Carballo's disability prevent him, with respect to this incident that was critical here, from returning to or remaining on the ground? Oh, when he had gout, it was chronic gout and acute gout. And so when he had gout in that morning, he had a little bit of pain, but not much. When he went up in the bucket truck, it got worse. And so when he was littered around, he only had to have a shirt on. I just asked you, when he went up, could he not have come down at that point? When he started having pain, he was with straps. Right. And then he did come down within a couple minutes, yes. Well, that's not clear in the record, and that's what I wanted to find out. Where is it clear, because it sounds like, from the record, that the supervisor came by and saw him up there without his straps on after he'd been told he can't do that. And where is it in the record the timing of how long he was up there? Because I'm trying to figure out if he could come down or if he got that acute pain when he was up there. Before he went up there, why did he go up? Well, in his testimony in the deposition, he basically said that he was feeling something, but not enough that was keeping him from working. But after he got up and threw up, and the budget was up, and he was working, the pain got worse. So he had the straps on, and he was listening. But then he came down. So there's a speed in the record, whether it's two minutes or ten, right? I mean, I think that you said he saw him up there five or ten minutes without it. He says two. Correct. Okay. And so that's a factual dispute. Yes. And so we believe the court relied on, you know, pursuing evidence, saying, for example, that the supervisor in his declaration and so forth says, oh, I told him he can go home and he insists on working. That's not pursuing the evidence most favorably to the nonmoving party. And secondly, it is also, if you look at the Gelfo case, which we cited but not on this point, Gelfo says very clearly that it would be, they rejected the employer's attempt to have an employee's doctor look down on their recommendation without doing any assessment of their own. Because here's the thing. In 2006, he asked you all, he tells Comcast, there was never any interactive classes to evaluate that. They have their own occupational doctors. It's just like a worker com case. Worker comes in, get her, you go out. You can't come back until an occupational doctor says it's safe. Here, they allow a situation where Mr. Carbato is regulating his own actions, whether he feels it can work safely or not. We believe that they should have done some kind of interactive process and gave us records earlier that human resources were never aware of these prior examinations. Right. Well, I think it's a peculiar case in the sense, one, is you have an agreed upon accommodation that you can take time off, and Comcast relies on that. Then there was apparently an informal accommodation that he would work underground on those days where he had an attack, but was never formalized. It was just sort of something that happened on the fly. Then you have basically a job description that says the essential part of this job is aerial work. So he had seen that aerial work was an essential job. So unless he was reassigned to do the ground work. Yes, but I'm trying to get to your argument about what case law says, that this informal accommodation that occurred for underground work was a reasonable accommodation to the point of allowing you to get to a jury when the agreed upon accommodation had already been set. Yeah, but he must have filed that accommodation that day. He did his work. I think the record is pretty clear when it did. He said he was feeling pain, and Chandler said, let's do a lot of outages as best you can. Well, he said that he didn't want to look at his declaration. He didn't want anything done different that day than what he did before he was able to supervise. It may or may not have any significance. I'm just saying he didn't ask to go home. Well, then the law doesn't require you to ask this for accommodation if the employer knows. There's no obligation for a compiler to ask for it that day. How would the employer have known that he had acute gout if he didn't say anything? Well, he did say that morning that he had gout, and again, gout is something so easy to change. Hold on, just play out for me what should have happened to him when he said he had gout, but he said he could go on. You're saying the employer should have said no, in your opinion? Well, he was expecting to work a new career, but morning he goes and says he needs to do that. I was like, you deserve the rest of the time. Thank you. Good morning, Your Honors. Before I move on, I'd like to move on to the upcoming podcast. I also have with me today counsel for the union, who is going to take a seat for two minutes in the argument. I just want to reserve a moment for a brief rebuttal. I'm sorry. I misspoke. Sorry. It's okay. The district court in granting summary judgment correctly noted that there is no case law or authority out there that says an employee who declines to avail themselves of an accommodation that is available to them and goes out and commits a misconduct is somehow shielded from termination because they allege that the misconduct was a result of a disability. What do we do with this whole informal sort of agreements, supposedly, that was taking place? The informal accommodation? Yeah, the informal. Underground. The underground. Absolutely, Your Honor. There is case law that is specifically addressed in Rains versus the city of Burbank. In Rains, you had an employee who was being temporarily accommodated with a desk job. He was a police officer for the city of Burbank. He couldn't engage in the typical patrol functions that an officer normally does. He was given an accommodation for six years. Then his employment or his disability was found to be permanent. At that point in time, the employer said, hey, we cannot no longer accommodate you in this position. And the California Court of Appeals said even if an employer has engaged in an accommodation of six years, they have no obligation to reasonably accommodate through the elimination of an essential function. Here we have admission after admission. Performing aerial work is an essential function of the position. On top of that, we also have the admission that in order to be able to do this job, you need to be able to do aerial work and underground work, and that every job is different. You can never determine when one job would require aerial work versus underground work. So against that backdrop, there is no more. In your view, what was Mr. Caballa supposed to do when he felt the pain while he was up in the air performing that thing? Well, in our view, I think he's very clear. What is also very clear is that at the district court level, Mr. Caballa did not challenge that Will Chandler asked him if he wanted to go home. His testimony was that he said, no, I'll just continue to work. At that point in time, the record was also clear that Mr. Chandler, at each and every occasion where Mr. Caballa had elected to stay home or do something or not come to work because it was not a problem, against the backdrop of Mr. Chandler asking him if he wanted to go home, I think it was incumbent upon Mr. Caballa to elect to use the He realized, and he testified unequivocally, that when he chose to remain at work or stay or come to work, he had to fulfill the essential functions of his position. He also testified unequivocally that it was incumbent upon him to satisfy the safety requirements of his position, and this was an OSHA mandated safety requirement. I mean, the supervisor was sort of raising the inference that his supervisor was discouraging him from exercising his reasonable accommodation. I guess by saying, well, do the best you can or not letting him, what's your response to that? It is not incumbent. I mean, an employee has to know the parameters of their own limitations, and that is precisely what the accommodation that Comcast had in place was for Mr. Caballa to be able to make that decision in terms of the Mr. Chandler to discourage him from exercising that accommodation. It wasn't challenged at the district court level, but Mr. Chandler asked him, do you want to go home? Are you well enough at work? He had also said that we had a lot of outages today, do the best you can. That goes to the nature of the position, Your Honor, and precisely why Mr. Caballa had the choice. If you're going to go out and deal with an outage where we don't know whether you're going to have to do aerial work or underground work, you need to do the best you can. But he didn't say, and Mr. Caballa did not expect, for him to exempt him from the safety requirements. No, I think that he was most American. That basically is that there was an informal reasonable accommodation. We had an intemporary basis to go underground work, and that he anticipated it that day and didn't receive it. But that actually is not supported by the record, Your Honor. In deposition, when I asked Mr. Caballa, when you told Mr. Chandler on the day in question, on December 3rd, that you had a job, did you expect him to do anything? And his answer was unequivocally no. Did you expect him to modify the job at any point? No. And that's at ER 865, 7 through 18. Let me ask you a different question. Why isn't working temporarily underground an available reasonable accommodation? Because precisely for the reason applied into essential function, it's everybody's. Mr. Chandler, getting back to the policeman's case, that was an accommodation on an ongoing basis before it was a permanent situation here. You have occasionally you would come in and have sufferings of pain. They say don't work underground. So why is that an unavailable reasonable accommodation? Because precisely of the nature of the job and the circumstances of this day, December 3rd, 2008, it was, I imagine, and I don't know this for a fact, but given the time of year was probably a pretty stormy time of year, with the number of outages, which everyone admits in Crockert was clear, you have to be able to get out there and respond to those outages in whatever they present, whether it require aerial work or underground work. Requiring somebody else to pick up those essential functions is not what the law requires. And while it may be available on a day when there are not a significant number of outages, the job is intended to deal with just that, dealing with outages and dealing with a servicing of the Comcast network in whatever the circumstances present. And that is why Mr. Carballo had the choice. If you were going to show up to work, you need to be able to do that job and respond to the circumstances that are presented. And when you do that job, you need to comply with the OSHA mandated rules. And Mr. Carballo admits that. He admits that both of those things were an essential function. So to answer your question, it's the nature of the job that made that accommodation on that day in question, which Mr. Carballo didn't even expect, which is an important fact. He did not expect it. Did he ask? No, he didn't. The record's clear. And this was asked again and again by both myself and his counsel. Did you ask Mr. Chandler to change anything? Did you ask any manager to change anything? And our briefs are full of the citations to the record in which he said no, no. Now, after the fact, counsel has come up with the argument in the face of the clear deposition admission that he did not expect anything to be changed, nor did he ask for anything to be changed on the day in question. The counsel has come up for a declaration with, well, I only expected what had been given to me in the past. But that's not what the record is. In terms of ---- Well, you said he said that Mr. Carballo said, I only expected what had been given to me in the past. He said that in his declaration. And had the underground been given to him prior to that. There's no dispute in the record that the three of these did have some supervisors that engaged in the informal process, as the court noted, by allowing him to work underground work. But on this day in question, he did not ask. He did not expect it. There was no unspoken expectation, even in Mr. Carballo's head, when he raised the vague reference that I have given. And is there a dispute in the record, do you acknowledge, between Mr. Carballo being in the air on that day, doing that aerial work for two minutes versus ten minutes? What's your argument? There is. It's an amateurial dispute, Your Honor. There is a dispute that Mr. Carballo said he was up there for a few minutes. The supervisor said he observed him for ten minutes. But Mr. Carballo also admitted that any amount of time that he spent in the air, he was fully complying with the ocean rules. And there's also no dispute that he did not comply with them in August 2012, which had nothing to do with Cal when he was up in the air without any of the safety equipment on, and even more, that any future violation would result in further disciplinary determination. I see that my time is up, and I will conclude my counsel. Thank you. Thank you. Good morning, Your Honors. Caroline Cohen on behalf of the Communications Workers of America. I'd like to address the issues that are specific to the union and first submit to Your Honors that this case is one in which an employee committed a serious error in judgment. It was one in which the employee could have fallen and killed himself. The union determined that Comcast's determination of Mr. Carballo was justified given that Mr. Carballo had committed the same safety violation just four months prior. The union had an interest in the safety of its members. There's no evidence in the record that the union had any sort of animus or bias towards Mr. Carballo. In fact, there's no evidence in the record that Mr. Carballo had asked the union to file a discrimination grievance on his behalf. The issue was first raised in July of 2013 after the union had already undergone two levels of review. And the union had undergone four very thorough levels of review. And there's simply no evidence that the union did not engage in a rational review of the record. And there's no evidence. And there's a suggestion, at least in the briefing, that other employees were not treated the same way for similar safety violations. In other words, they weren't terminated at the end of the second one. There is some reference in the record. However, there's no specific class that the plaintiff's raised in his briefing on summary judgment to show that there are similarly situated employees who also had a disability who did not elect to use their reasonable accommodation on the day that they committed a safety violation. There's no evidence. Well, it's easier to say that we don't have a disability because the other way, if they only have a disability and they committed a safety violation, it would be more serious, wouldn't it? In this case, there are no comparable employees who committed safety violations who were given more strict penalties than Mr. Carballo was given. There's simply no evidence, specific evidence, that Mr. Carballo came forward with on summary judgment to support this argument. Thank you, Counsel. Briefe, Your Honor, part of the discussion here brings up the fact that if there was no interactive process here, the accommodation was not reasonable, and if there was an actual… The interactive process, the goal for an interactive process is to come up with a reasonable accommodation, typically, and if the parties thought they had a reasonable accommodation, why would there be an interactive process? If he admits or a client admits that he was told he couldn't leave and that was an accommodation… He was not told that's my point of the record. The record shows, in the record 200, don't do the best you can, and the attorney for Comcast said, did he say anything else? The answer was no. They also distort the record. Defendant's brief at page 53 says that Mr. Carballo said he didn't expect you to do anything. There's no evidence that he didn't expect them to do anything different than what happened in previous days. There was no elimination of essential functions here, and I might suggest, Your Honor, to your question, if there was an interactive process, it may have been determined that it would have been unsafe for him to be a technician and that he should have looked at other jobs, but that wasn't done. The human resource department was not involved in any of this, and Chandler, in the past, the supervisor, had allowed him to work underground, so there's clearly disputes in the evidence here that I don't believe should lead to a jury trial. Thank you. Thank you. The case is adjourned. We'll be in recess.
judges: Fernandez, Thomas, Murguia